UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

**THOMAS BIESTY,**

    **Plaintiff,**

V.

**CITY OF IRVINE and JEFF KNUCKLES,**

    **Defendants.**

CIVIL ACTION NO. 5:15-23-KKC

OPINION AND ORDER

\*\*\* \*\*\* \*\*\*

This matter is before the Court on two motions for summary judgment (DE 20). The defendant Jeff Knuckles, who was an officer with the police department of Irvine, Kentucky, moves for summary judgment on the plaintiff's unlawful-entry claim against him. The defendant city of Irvine, Kentucky moves for summary judgment on all the claims against it. For the following reasons, the Court will grant both motions.

**I.      Facts**

The following facts are either undisputed or construed in the plaintiff's favor.

At about 10:45 p.m. on February 25, 2014, Officer Knuckles received a call from Estill County Central dispatch that an arrest warrant had been issued for the plaintiff Thomas Biesty at 141 North Plum Street. (DE 22-3, Knuckles Dep. at 42-43; DE 22, Response at 2.) Officer Knuckles drove to the Plum Street address and parked his patrol car in an alley away from the house so the occupants would not see it. (DE 22-3, Knuckles Dep. at 52.) When he arrived at the house, he looked in the windows but was unable to see anyone or hear anything. (DE 22-3, Knuckles Dep. at 53-54, 56.)

The house has two front doors adjacent to each other. (DE 22-2, Biesty Dep. at 21.) One leads directly to what the plaintiff Thomas Biesty described as his mother-in-law's bedroom. (DE 22-2, Biesty Dep. at 11.) The plaintiff described the second door as "my bedroom door." (DE 22-2, Biesty Dep. at 11.) He testified, "there's one door from coming outside the house to get into my room, and then the other door goes to my mother-in-law's bedroom. It's weird. The bedrooms are in the front of the house, so when you come in, you come right into the bedroom." (DE 22-2, Biesty Dep. at 10.)

Biesty testified as follows as to the events immediately preceding his arrest:

> Okay, it was two doors on the porch. Well, there was a knock on the other door, not mine, then the knock came on our door. My wife got up; she opened up the door, and she said, "What can I do for you?" It was a cop. He said, "Is Tommy here?" And she was, like, "Yeah, why?" Before she could get "why" out, he just pushed the door open, walked right past my old lady and drug me out of the bed.

(DE 22-, Knuckles Dep. at 9-10.)

Biesty testified that Officer Knuckles immediately handcuffed him and then, as he and Office Knuckles were walking to his patrol car, for no reason, Officer Knuckles kicked him in the back, causing Biesty to fall onto the pavement. (DE 22-2, Biesty Dep. at 24, 51.) Biesty testified that he started screaming and Officer Knuckles then "picked me up by the handcuffs . . . and there was one solid shot to the eye, then it was another." (DE 22-2, Biesty Dep. at 51-52.) When the two arrived at Officer Knuckles' patrol car, Officer Knuckles "opened up the back door and just – I went face first down again, couldn't protect my face, face down into the car." (DE 22-2, Biesty Dep. at 54.)

Officer Knuckles then transported Biesty to the Estill County Jail where he was incarcerated for approximately twelve hours. He was then transported to the Madison County jail where he was incarcerated six and a half days. (DE 22-2, Biesty Dep. at 70, 160-61.) Biesty was

2

charged with criminal possession of a forged instrument. The claim was dismissed by Madison District Court. (DE 22-12, Madison District Docket.)

Biesty then filed this claim against Officer Knuckles and the city of Irvine. As to Officer Knuckles, he asserts a state-law claim of assault and battery and a claim under 42 U.S.C. § 1983, asserting that Officer Knuckles violated his fourth amendment right to be free from excessive force and unlawful entry. He also asserts a constitutional claim against the city under § 1983, asserting that the city had a custom, practice, or policy which resulted in the constitutional violations against him.

The city of Irvine now moves for summary judgment on the single claim against it. Officer Knuckles concedes there are factual disputes regarding the excessive force and assault-and-battery claims against him. He moves for summary judgment on only the unlawful-entry claim.

**II.  Analysis**

**A.  Unlawful Entry**

Biesty does not contest the legality of the arrest warrant or of his arrest. Instead, he contests Officer Knuckles' entry into the Plum Street residence to arrest him. The Supreme Court has held that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling *in which the suspect lives* where there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980) (emphasis added). In such situations, a search warrant is not required because the arrest warrant suffices "to interpose the magistrate's determination of probable cause between the zealous officer and the citizen." *Id*. at 602.

3

Biesty argues *Payton* is inapplicable here because he did not *live* at the Plum Street dwelling. Instead, he argues, it belonged to his mother-in-law and he was only an overnight guest. Thus, he argues the arrest warrant was insufficient and instead Officer Knuckles was required to obtain a search warrant to enter the premises. For this argument, he cites *Steagald v. United States*, 451 U.S. 204 (1981).

In that case, an arrest warrant had been issued for Ricky Lyons. A confidential informant told officers that Lyons could be found at the home of a third party, the defendant Steagald. Without first obtaining a search warrant, law enforcement officers entered Steagald's residence to arrest Lyons and discovered cocaine. The officers arrested Steagald and he was later charged with federal drug charges. Steagald, who, again, was the homeowner, argued that the search was illegal and the Supreme Court agreed, finding that, absent exigent circumstances, a law enforcement officer may not legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant. *Id*. at 205-06.

The Court explained that there are two distinct interests at stake in such a situation. First, is the interest of the person named in the arrest warrant – the suspect – in being free from an unreasonable seizure. *Id*. at 216. Second, is the homeowner's interest in being free from an unreasonable search of his home. *Id*. The Court determined that, while the arrest warrant protects the suspect from an unreasonable seizure, it does nothing to protect the third party's "interest in the privacy of his home and possessions against the unjustified intrusion of the police." *Id*. at 213.

*Steagald* and *Payton* can be read to produce an odd result. Pursuant to *Payton*, an arrest warrant alone is all that is necessary to enter into a suspect's own dwelling to arrest him. But, as Biesty argues, *Steagald* can be read to give the suspect greater protection when he is located in a

third party's home, requiring a search warrant in such a scenario. In *United States v. Buckner*, 717 F.2d 297 (6th Cir. 1983), the Sixth Circuit recognized that such an outcome is illogical. It explained that whether an arrest warrant alone suffices where law enforcement officers enter into a third-party residence to effect an arrest depends upon which party is asserting the constitutional violation – the homeowner or the suspect named in the arrest warrant.

In *Buckner*, without first obtaining a search warrant, the officers entered the suspect's mother's home to arrest him. The court noted that the case was different from *Payton* because the suspect was not arrested in his own home and was also different from *Steagald* because the person challenging the entry was the actual suspect named in the arrest warrant, not the homeowner. *Id*. at 299. The court held that "[t]he fact that the defendant was the person named on the arrest warrant mandates application of *Payton* rather than *Steagald*." *Id*. at 300. Thus, the entry was legal if the officers obtained an arrest warrant and had reason to believe the defendant was inside the premises searched. *Id*. at 300-01.

Here too the constitutional challenge is asserted by the person named on the arrest warrant. The homeowner – Biesty's mother-in-law – does not challenge the entry into her home. Accordingly, even if Biesty did not live in the Plum Street residence, *his* constitutional rights – as distinct from those of the homeowner – were not violated if there was an arrest warrant and Officer Knuckles had reason to believe that Biesty was inside the premises. Although Biesty points out that the warrant misspelled his last name and he asserts that it also contained incorrect height and weight information for him, the Court does not understand him to contest that there was a warrant issued for his arrest. He does, however, argue that the Officer Knuckles did not have sufficient cause to believe he was in the Plum Street residence.

5

It is unclear in the Sixth Circuit whether officers armed with an arrest warrant must have a reasonable belief that the suspect is inside or probable cause to believe that he is inside of the premises before entering. *See United States v. Hardin*, 539 F3d 404 (6th Cir. 2008). The Court need not decide that issue here because Officer Knuckles had probable cause to believe that Biesty was inside the Plum Street residence. Officer Knuckles testified that he "got a call through dispatch that there was supposed to be someone at [the Plum Street residence] with an active warrant for his arrest." (DE 22-3, Knuckles Dep. at 43.) The incident report indicates that dispatch advised Office Knuckles that the individual's name was "Thomas Beasty."

Biesty points out that the incident report misspells his last name as "Biestie." As discussed, the arrest warrant also misspells Biesty's last name and Biesty asserts that it contained his incorrect height and weight. This is immaterial to the probable-cause determination. Officer Knuckles received the report of the warrant via oral radio communications. He did not have a copy of the actual warrant or of the incident report. Further, he was not required to obtain a copy of the warrant before entering the Plum Street residence to effect the arrest. *See Buckner*, 717 F.2d at 301. He was entitled to rely on information he received via radio from the police dispatcher indicating that an arrest warrant had been issued for a Thomas Biesty located at 141 N. Plum Street in Irvine, Kentucky. *See United States v*. Mounts, 248 F.3d 712, 715 (7th Cir. 2001) ("[P]olice officers are entitled to rely on the reasonable information relayed to them from a police dispatcher.").

Biesty himself testified that, after arriving at the address, Officer Knuckles knocked on the front door leading to Biesty's room and verified the information he had received from dispatch. He asked Biesty's wife if "Tommy" was there and his wife said he was. That response along with the information that Biesty received from dispatch regarding the subject of the arrest

6

warrant and his location established probable cause for Officer Knuckles to believe that the person identified on the arrest warrant was inside the Plum Street residence. Accordingly, Officer Knuckles' entry into the residence to arrest Biesty did not violate Biesty's Fourth Amendment rights and Biesty's unlawful-entry claim must be dismissed.

At a minimum, Officer Knuckles is entitled to qualified immunity on the unlawful-entry claim. Qualified immunity shields government officials performing discretionary functions from liability under Section 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 538 (6th Cir. 2008) (citation omitted). An official is not entitled to qualified immunity if the facts alleged by the plaintiff establish a prima facie case of a constitutional violation and the right was clearly established at the time of the violation. *Id.* at 538-39.

Here, there was at least no clearly established law that required Officer Knuckles to take any more precautions than he did before entering the residence after receiving a report from dispatch that an arrest warrant had been issued for an individual who could be found at that particular address.

B.   **City of Irvine**

In his response, Biesty makes clear that his claim against the city of Irvine is that the city failed to train or supervise Officer Knuckles with regard to the proper use of force. A city can be held liable under § 1983 "only where its policy or custom causes the constitutional violation in question." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005). It cannot be liable solely because an employee committed a constitutional violation. "While a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional violation directly attributable to it, § 1983 does not impose vicarious liability on a

7

municipality for the constitutional torts of its employees." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir.1997).

As to an alleged failure to train its employees, in City *of Canton v. Harris*, 489 U.S. 378 (1989), the Court held that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983." *Id.* at 389. In *Canton*, the court recognized that "[i]t may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to their need." *Id.* at 390.

Nevertheless, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Biesty can demonstrate deliberate indifference for purposes of a failure-to-train claim in one of two ways. First, he can show a "pattern of similar constitutional violations by untrained employees" which would demonstrate the city's "continued adherence to an approach that [it] know[s] or should know has failed to prevent tortious conduct by employees." *Connick,* 563 U.S. at 62. Biesty has not pointed to any evidence of similar constitutional violations by the Irvine police department.

Second, Biesty can establish "a single violation of federal rights, accompanied by a showing that the municipality has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation . . . ." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997). This mode of proof is

8

"available in a narrow range of circumstances where a federal rights violation may be a highly predictable consequence of a failure to equip employees with specific tools to handle recurring situations." *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 739 (6th Cir. 2015) (internal quotations and brackets and citation omitted). For example, "the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Canton*, 489 U.S. at 390 n.10 (citation omitted).

In such cases, the likelihood that a constitutional violation will occur "could lead to a finding that the policymaker's decision not to train reflects deliberate indifference" to the violation of that constitutional right. *Shadrick*, 805 F.3d at 739. Likewise, "[t]he high degree of predictability" may also support an inference that the policymaker's indifference caused the constitutional violation that was so predictable. *Id*. (citation omitted).

The city argues that it cannot be liable for failure to train under a single-violation theory because it relied on the training provided by the state of Kentucky through its police officer certification program. That training includes basic training and 40 hours of annual in-service training including some training on the use of force. There is no dispute that Officer Knuckles completed the state's required basic training and, at the time of Biesty's arrest, was in compliance with all annual training requirements. The city's reliance on the state's police officer training program cannot be held to constitute a decision not to train that reflects deliberate indifference to the violation of constitutional rights. Accordingly, Biesty's failure-to-train claim must be dismissed.

As to a failure-to-supervise claim, this is a "rare" claim. "Most agree that it exists and some allege they have seen it, but few actual specimens have been proved." *Amerson v.*

9

*Waterford Twp.*, 562 F. App'x 484, 491 (6th Cir. 2014) (quoting *Mize v. Tedford*, 375 Fed. App'x 497, 500 (6th Cir.2010)).  To sustain this claim, the plaintiff "must show that the city acted with 'deliberate indifference' to the risk of the constitutional violation and that its deliberate indifference was the 'moving force' behind the assault." *Id*. at 492 (quoting *Mize*, 375 F. App'x at 500 (brackets omitted). As evidence that the city failed to supervise its police officers, Biesty points only to the fact that the city conducted performance evaluations on an as-needed basis. (DE 22, Response at 22.) Such evidence "alone is not enough to show deliberate indifference, especially in the absence of evidence of a pattern of excessive force, a record of officers going unpunished for excessive force, or other circumstances tending to show that" the city of Irvine was aware or could have been aware that Officer Knuckles was prone to using excessive force. *Amerson*, 562 F. App'x at 492.

     Biesty asserts that Officer Knuckles had been named as a defendant in one prior excessive-force lawsuit. However, the plaintiff in that action did not move to name Officer Knuckles as a defendant until after Biesty's February 25, 2014 arrest. *See Holton v. Conrad*, No. 5:14-cv-00025-KKC, DE 18, Motion to Amend (filed October 31, 2014). Biesty also points to Officer Knuckles' testimony that he thought someone had filed a complaint against him while he was employed at Eastern Kentucky University. Officer Knuckles did not recall the nature of the complaint but he testified that it did not deal with the use of force. (DE 22-2, Biesty Dep. at 13.) There is no evidence that, prior to Biesty's arrest, any city of Irvine employee was aware of any evidence that Officer Knuckles was prone to using excessive force. Accordingly, Biesty's failure-to-supervise claim against the city must be dismissed.

### C. Officer Knuckles in his Official Capacity

Biesty sues Officer Knuckles in his individual and official capacity. A suit against an individual "in his official capacity" is essentially a suit brought directly against the local government unit. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir.1989). A § 1983 action should normally be brought against either or both of two defendants: the local public official in his individual capacity and the local government which employs or is sought to be held responsible for the acts of the public official. *Id*. at 1244-45. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity ." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "There is no longer a need to bring official-capacity actions against local government officials. . . . " *Id*. at 167 n. 14. Because Biesty has asserted a § 1983 claim against the tity of Irvine, his § 1983 claims against Officer Knuckles in his official capacity will be dismissed.

Likewise, Biesty's state-law assault-and-battery claim against Officer Knuckles in his official capacity is essentially a suit against the city. *Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky.2001). Accordingly, that claim will also be dismissed.

### III. Conclusion

For all of these reasons, the Court hereby ORDERS as follows:

1) The city of Irvine's motion for summary judgment (DE 20) is GRANTED and Officer Knuckles' motion for partial summary judgment (DE 20) is GRANTED;

2) Biesty's § 1983 claim against the city of Irvine, Kentucky is DISMISSED;

3) all claims against Officer Knuckles in his official capacity are DISMISSED;

4) the unlawful-entry claim against Officer Knuckles in his individual capacity is DISMISSED;

5) the pretrial conference in this matter is rescheduled to **August 8, 2016 at 10:30 a.m.**;

6) the trial in this matter is rescheduled to begin **August 9, 2016 at 9:00 a.m**. **with counsel to be present at 8:30 a.m.**; and

7) the pretrial filings deadlines set forth in the Court's pretrial order (DE 16) remain in effect.

Dated July 1, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY