Eastern District of Kentucky
**F I L E D**
AUG 0 1 2016
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| THOMAS BIESTY,<br>    Plaintiff,<br><br>V.<br><br>JEFF KNUCKLES,<br>    Defendant. | CIVIL ACTION NO. 5:15-23-KKC<br><br><u>OPINION AND ORDER</u> |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the defendant's motion in limine (DE 29). For the following reasons, the motion will be granted in part and denied in part.

I. **Facts**

The following facts are either undisputed or construed in the plaintiff's favor.

At about 10:45 p.m. on February 25, 2014, Officer Knuckles received a call from Estill County Central dispatch that an arrest warrant had been issued for the plaintiff Thomas Biesty at 141 North Plum Street. (DE 22-3, Knuckles Dep. at 42-43; DE 22, Response at 2.) Officer Knuckles drove to the Plum Street address and parked his patrol car in an alley away from the house so the occupants would not see it. (DE 22-3, Knuckles Dep. at 52.) When he arrived at the house, he looked in the windows but was unable to see anyone or hear anything. (DE 22-3, Knuckles Dep. at 53-54, 56.)

The house has two front doors adjacent to each other. (DE 22-2, Biesty Dep. at 21.) One leads directly to what the plaintiff Thomas Biesty described as his mother-in-law's bedroom. (DE 22-2, Biesty Dep. at 11.) The plaintiff described the second door as "my bedroom door." (DE 22-2, Biesty Dep. at 11.) He testified, "there's one door from coming outside the house to

get into my room, and then the other door goes to my mother-in-law's bedroom. It's weird. The bedrooms are in the front of the house, so when you come in, you come right into the bedroom." (DE 22-2, Biesty Dep. at 10.)

    Biesty testified as follows as to the events immediately preceding his arrest:

Okay, it was two doors on the porch. Well, there was a knock on the other door, not mine, then the knock came on our door. My wife got up; she opened up the door, and she said, "What can I do for you?" It was a cop. He said, "Is Tommy here?" And she was, like, "Yeah, why?" Before she could get "why" out, he just pushed the door open, walked right past my old lady and drug me out of the bed.

(DE 22-, Knuckles Dep. at 9-10.)

    Biesty testified that Officer Knuckles immediately handcuffed him and then, as he and Office Knuckles were walking to his patrol car, for no reason, Officer Knuckles kicked him in the back, causing Biesty to fall onto the pavement. (DE 22-2, Biesty Dep. at 24, 51.) Biesty testified that he started screaming and Officer Knuckles then "picked me up by the handcuffs . . . and there was one solid shot to the eye, then it was another." (DE 22-2, Biesty Dep. at 51-52.) When the two arrived at Officer Knuckles' patrol car, Officer Knuckles "opened up the back door and just – I went face first down again, couldn't protect my face, face down into the car." (DE 22-2, Biesty Dep. at 54.)

    Officer Knuckles then transported Biesty to the Estill County Jail where he was incarcerated for approximately twelve hours. He was then transported to the Madison County jail where he was incarcerated six and a half days. (DE 22-2, Biesty Dep. at 70, 160-61.) Biesty was charged with criminal possession of a forged instrument. The claim was dismissed by Madison District Court. (DE 22-12, Madison District Docket.)

    Biesty then filed this claim against Officer Knuckles and the city of Irvine. As to Officer Knuckles, he asserts a state-law claim of assault and battery and a claim under 42 U.S.C. § 1983,

asserting that Officer Knuckles violated his fourth amendment right to be free from excessive force and unlawful entry. He also asserts a constitutional claim against the city under § 1983, asserting that the city had a custom, practice, or policy which resulted in the constitutional violations against him.

In its ruling on the defendants' motions for summary judgment, the Court dismissed the claims against the city of Irvine and the unlawful entry claim against Officer Knuckles. In his motion for summary judgment, Officer Knuckles conceded that there were material factual disputes regarding the excessive force and assault-and-battery claims against him and those claims remain set for trial.

## II. Analysis

Officer Knuckles' moves to exclude various kinds of evidence. This motion is **GRANTED** in part and **DENIED** in part as follows:

1) Officer Knuckles moves to exclude any evidence that Biesty's arrest warrant or arrest were mistaken or wrongful based on Federal Rules of Evidence 402 and 403. Officer Knuckles concedes that the warrant had inaccurate information and that it was later "determined to be a case of mistaken identity." Nevertheless, there has been no argument in this case that it was unlawful for Officer Knuckles to arrest Biesty or that the arrest warrant itself was unlawfully issued. Biesty has argued only that it was unlawful for Officer Knuckles to enter the residence to arrest him without a search and that Officer Knuckles used excessive force to carry out the arrest.

   This motion will be **GRANTED** to the extent that Officer Knuckles moves to exclude any argument or statement that the arrest or warrant was "wrongful" or "illegal" or any similar description. The only issue remaining in this case is whether Officer Knuckles used excessive force in effecting Biesty's arrest. It is the Court's understanding that there has never been any finding that the arrest or arrest warrant was in any way unlawful. Further, this Court has already determined that Officer Biesty is not subject to liability for entering Biesty's residence. Accordingly, any argument or statement that the arrest or arrest warrant was unlawful or otherwise wrongful is **EXCLUDED**.

3

2) Officer Knuckles moves to exclude any argument or evidence that his execution of the arrest warrant was unlawful or otherwise wrongful. This motion is **GRANTED** for the reasons stated in paragraph 1.

3) Officer Knuckles moves to exclude any evidence or argument that the charges for which Biesty was arrested were ultimately dismissed. This motion is **DENIED**. As the Court understands it there is no dispute that the charges against Biesty were ultimately dismissed. Nor is there any dispute or contradictory evidence that Officer Knuckles had no part in procuring the warrant but instead merely executed it. Accordingly, the Court will permit limited evidence on both issues: evidence that the charges against Biesty were ultimately dismissed and evidence that Officer Knuckles was not in any way involved in procuring the arrest warrant and that he was only involved in executing it. Since there is no dispute on these issues, such evidence may be best presented through a stipulation. If the parties can agree on such a stipulation, they should submit it for the Court's consideration at the pretrial conference. If the parties cannot reach an agreement on the stipulation, the Court may provide the jury with an appropriate instruction on these issues.

4) Officer Knuckles moves to exclude any testimony, evidence, or reference to his resignation from the Irvine police department. This motion is **GRANTED** to the extent that Officer Knuckles moves to exclude the timing and reasons for his resignation from the police department. Such evidence is irrelevant to the issues before the jury. Again, the issue here is whether Officer Knuckles used excessive force in effecting Biesty's arrest. Biesty argues that evidence that Officer Knuckles resigned due to mental health issues will help establish "why he did what he did." As both parties agree, however, Officer Knuckles' intent is not an issue in this case. (DE 41, Response at 4.) To the extent that Biesty argues that proof of Officer Knuckles' mental state is probative of *whether* he did the acts at issue, he has submitted no expert testimony to establish that.

5) Officer Knuckles moves to exclude any testimony, evidence or reference to his mental state or condition. This motion is **GRANTED** for the reasons discussed in paragraph 4.

6) Officer Knuckles moves to exclude evidence of another excessive force claim filed against him in 2014 which was resolved by the parties to that action. This motion is **GRANTED**. Pursuant to Federal Rule of Evidence 404(b)(1), evidence of such "other acts" is not admissible to prove that a person acted in accordance with his character. Such evidence may, however, be used for other purposes. In his response, Biesty does not argue that evidence of any other acts by Officer Knuckles would be used for any permitted purpose. He argues only that the evidence could be used for impeachment if Officer Knuckles denies having been involved in any other excessive force cases. Biesty has not argued, however, that evidence of any of Officer Knuckles other acts should be admitted for any allowable purpose under Rule 404(b)(2). Accordingly, Biesty is not permitted to

4

ask Officer Knuckles any questions about any such acts. If Biesty believes that any testimony or evidence at trial opens the door to the introduction of evidence of such acts for impeachment purposes, he shall approach the bench before attempting to elicit or introduce such evidence.

7) Officer Knuckles moves to prohibit Biesty from introducing any evidence that would prove his damages. This motion is **DENIED** in part and **GRANTED** in part as follows. Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires that each party provide the other party with a computation of each category of damages claimed by the disclosing party. When "a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). The rule recognizes, however, that "instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed.R.Civ.P. 37(c)(1)(C).

In his disclosures, Biesty stated only that he is seeking "all damages available" under Section 1983 but that "his economic and non-economic damages cannot be calculated at this time." (DE 41-2, 41-3). Nevertheless, Officer Knuckles states that Biesty attached two medical lien letters from Medicare and Medicaid to his disclosures. Biesty provides no reason for failing to notify Officer Knuckles of any additional medical expenses. Further, the failure to notify Officer Knuckles of precisely what medical damages he seeks beyond those reflected in the lien letters is not harmless. Officer Knuckles could not prepare to contest any unidentified expenses. The Court finds no sanction appropriate here other than excluding evidence of the unidentified medical damages. Accordingly, the motion is **GRANTED** as to any medical expenses other than those reflected in the medical lien letters. Evidence regarding the expenses reflected in the medical lien letters will be permitted provided Biesty offers sufficient proof that the expenses at issue were caused by the altercation.

Biesty stated in his deposition that he sought damages for pain and suffering though he was unable to quantify the amount. Likewise, he stated in his complaint that he seeks punitive damages. Nevertheless, Biesty did not provide a computation of the amounts of such damages. "Rule 26(a)(1)(A)(iii) is unambiguous—it applies to each category of damages claimed; it is not limited to economic damages." *Lucas v. Transamerica Life Ins. Co.*, No. 5:10-CV-76-KKC, 2011 WL 5148883, at *1 (E.D. Ky. Oct. 21, 2011). The Court declines to follow courts that have held to the contrary. "A litigant (and the system) may relegate any final award to the jury, but the parties and Court should know the range sought and basis for same . . . In general, the economic scope of a case informs decisions about resource use, burdensomeness, settlement, and potentially insurance issues." *Id.* Nevertheless, because these damages are less amenable to precise calculation than other damages, the Court does not find exclusion of evidence regarding pain and suffering or punitive damages appropriate. Instead,

5

the Court hereby **ORDERS** that, prior to the pretrial conference, Biesty **SHALL** supplement his disclosures with specified amounts for the pain and suffering and punitive damages he seeks.

As to the matter of attorney's fees, under 42 U.S.C. § 1988(b), "the 'prevailing party' in an action to enforce civil rights under § 1983 may recover 'a reasonable attorney's fee as part of the costs' of litigation." *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014). The amount of any such fees will be decided by the Court, not the jury, after the trial of this matter. *See Brooks v. Cook*, 938 F.2d 1048, 1051 (9th Cir. 1991) ("The award of attorneys' fees is a matter of law for the judge, not the jury.") Accordingly, any motion to exclude evidence at the trial regarding attorney's fees is **GRANTED** as such evidence is irrelevant to the issues to be decided at trial. Nevertheless, if Biesty should prevail at trial and continues to seek attorney's fees, he will be required to calculate his attorney's fees for the Court and will be permitted to support that calculation with evidence as necessary. The Court sees no reason to require any such calculation prior to trial. To the extent that a calculation of Biesty's attorney's fees may help to inform decisions about resource use, burdensomeness, or settlement, unlike other kinds of damages, defense counsel can adequately estimate the amount of a "reasonable attorney's fee" in a case.

8) Officer Knuckles moves to exclude evidence regarding certain types of damages Biesty may claim. This motion is **GRANTED** in part and **DENIED** in part as follows.
   - Officer Knuckles move to exclude evidence that Biesty's right foot was broken in the altercation; evidence that Biesty suffers ongoing headaches, pain in his right eye or vomiting after the altercation; and evidence that the altercation aggravated a prior elbow injury. Officer Knuckles argues that Biesty has offered no expert proof regarding causation on these issues. Biesty points out that he has identified various treating physicians as witnesses, although he does not state that these physicians will testify that any of these injuries were caused by the altercation. Regardless, the motion is **GRANTED** to the extent that Officer Knuckles moves to exclude *any non-expert* evidence that Biesty's right foot was broken in the altercation with Officer Knuckles; that Biesty suffers any permanent injuries as a result of the altercation; or that the altercation aggravated a prior elbow injury. Biesty is not qualified to testify as to causation on these issues and no juror could make such a finding based on lay knowledge. Biesty may present the testimony of any treating physician as to causation on these damages and Biesty may himself testify as to any symptoms he suffered immediately after the accident that were readily observable by him.

   - Officer Knuckles moves to exclude evidence that Biesty has suffered depression, anxiety, or post-traumatic stress disorder ("PTSD") as a result of the altercation. This motion is **GRANTED** in part and **DENIED** in

6

part. Biesty offers no expert evidence that he suffers PTSD as a result of the altercation. PTSD is a specific disorder and expert testimony is required to establish its existence. Biesty is not qualified to testify that he has PTSD. Nor could a juror make a finding of PTSD based on lay knowledge. Accordingly, any non-expert evidence that Biesty suffers from PTSD is **EXCLUDED**. As to evidence that Biesty suffers from "depression" or "anxiety," Biesty may testify that he believes he has experienced such symptoms since the altercation. He has personal knowledge of any feelings of depression or anxiety. To the extent that Biesty has not been diagnosed by a medical professional with depression or anxiety or to the extent that Biesty is unable to present expert testimony establishing that the altercation caused such depression or anxiety, Officer Knuckles may explore those issue on cross examination.



Signed By:
Karen K. Caldwell
United States District Judge

8/1/2014