Eastern District of Kentucky
**F I L E D**
AUG 0 2 2016
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **THOMAS BIESTY,** | **CIVIL ACTION NO. 5:15-23-KKC** |
| Plaintiff, | |
| V. | **OPINION AND ORDER** |
| **JEFF KNUCKLES,** | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the plaintiff's motion in limine (DE 38). For the following reasons, the motion will be DENIED in part, GRANTED in part, and DEFERRED in part.

I. **Facts**

The following facts are either undisputed or construed in the plaintiff's favor.

At about 10:45 p.m. on February 25, 2014, Officer Knuckles received a call from Estill County Central dispatch that an arrest warrant had been issued for the plaintiff Thomas Biesty at 141 North Plum Street. (DE 22-3, Knuckles Dep. at 42-43; DE 22, Response at 2.) Officer Knuckles drove to the Plum Street address and parked his patrol car in an alley away from the house so the occupants would not see it. (DE 22-3, Knuckles Dep. at 52.) When he arrived at the house, he looked in the windows but was unable to see anyone or hear anything. (DE 22-3, Knuckles Dep. at 53-54, 56.)

The house has two front doors adjacent to each other. (DE 22-2, Biesty Dep. at 21.) One leads directly to what the plaintiff Thomas Biesty described as his mother-in-law's bedroom. (DE 22-2, Biesty Dep. at 11.) The plaintiff described the second door as "my bedroom door."

(DE 22-2, Biesty Dep. at 11.) He testified, "there's one door from coming outside the house to get into my room, and then the other door goes to my mother-in-law's bedroom. It's weird. The bedrooms are in the front of the house, so when you come in, you come right into the bedroom." (DE 22-2, Biesty Dep. at 10.)

> Biesty testified as follows as to the events immediately preceding his arrest:
>
> Okay, it was two doors on the porch. Well, there was a knock on the other door, not mine, then the knock came on our door. My wife got up; she opened up the door, and she said, "What can I do for you?" It was a cop. He said, "Is Tommy here?" And she was, like, "Yeah, why?" Before she could get "why" out, he just pushed the door open, walked right past my old lady and drug me out of the bed.

(DE 22-, Knuckles Dep. at 9-10.)

Biesty testified that Officer Knuckles immediately handcuffed him and then, as he and Office Knuckles were walking to his patrol car, for no reason, Officer Knuckles kicked him in the back, causing Biesty to fall onto the pavement. (DE 22-2, Biesty Dep. at 24, 51.) Biesty testified that he started screaming and Officer Knuckles then "picked me up by the handcuffs . . . and there was one solid shot to the eye, then it was another." (DE 22-2, Biesty Dep. at 51-52.) When the two arrived at Officer Knuckles' patrol car, Officer Knuckles "opened up the back door and just – I went face first down again, couldn't protect my face, face down into the car." (DE 22-2, Biesty Dep. at 54.)

Officer Knuckles then transported Biesty to the Estill County Jail where he was incarcerated for approximately twelve hours. He was then transported to the Madison County jail where he was incarcerated six and a half days. (DE 22-2, Biesty Dep. at 70, 160-61.) Biesty was charged with criminal possession of a forged instrument. The claim was dismissed by Madison District Court. (DE 22-12, Madison District Docket.)

Biesty then filed this claim against Officer Knuckles and the city of Irvine. As to Officer Knuckles, he asserts a state-law claim of assault and battery and a claim under 42 U.S.C. § 1983, asserting that Officer Knuckles violated his fourth amendment right to be free from excessive force and unlawful entry. He also asserts a constitutional claim against the city under § 1983, asserting that the city had a custom, practice, or policy which resulted in the constitutional violations against him.

In its ruling on the defendants' motions for summary judgment, the Court dismissed the claims against the city of Irvine and the unlawful entry claim against Officer Knuckles. In his motion for summary judgment, Officer Knuckles conceded that there were material factual disputes regarding the excessive force and assault-and-battery claims against him and those claims remain set for trial.

**II.  Analysis**

Biesty moves to exclude various kinds of evidence. This motion is **GRANTED** in part, **DENIED** in part, and **DEFERRED** in part as follows.

1) Officer Knuckles does not object to Biesty's motion to exclude the following evidence. Accordingly, the motion is **GRANTED** as to the following evidence and all such evidence is **EXCLUDED**:

    - references to Biesty having Hepatitis C;
    - references to Biesty's suspended license;
    - Biesty's prior traffic tickets in New York;
    - 2015 traffic citation and removal of Biesty's truck from his property for not having tags on his license plate;
    - any reference to Biesty's suspended license;
    - the fact that Biesty filed a lawsuit against a horse owner and any compensation received in that lawsuit;
    - compensation received by Biesty regarding a prior auto accident; and
    - the amounts of Social Security Disability received by Biesty after a 2008 work-related injury.

2) Biesty moves to exclude evidence regarding his prior criminal convictions. This motion is **DENIED** with regard to the 2014 arrest warrant which authorized Officer

3

Knuckles to arrest Biesty. Without it, the jury would have no understanding of why Officer Knuckles entered the residence to arrest Biesty. By prior order, the Court has ruled that evidence that the charges against Biesty were ultimately dismissed is admissible. This evidence will counter any prejudice to Biesty by the introduction of the arrest warrant.

As to evidence regarding other portions of Biesty's criminal history, the motion is also **DENIED** but Biesty may reassert the motion at trial. Biesty argues that such evidence is irrelevant to the issue of whether Officer Knuckles used excessive force in arresting him and is also unfairly prejudicial. He also argues that the evidence is not permissible under Federal Rule of Evidence 404(b) which provides that evidence of crimes, wrongs, or "other acts" is not admissible to prove that a person acted in accordance with his character. Such evidence may, however, be used for other purposes.

Officer Knuckles argues that the evidence will become relevant and admissible for impeachment purposes if Biesty should testify in a certain manner. Officer Knuckles asserts that, immediately after the altercation, Biesty told jail personnel that injuries to his face were caused by an altercation with Stephen Todd Wells, the boyfriend of Biesty's girlfriend's sister. Biesty now asserts that the injuries were caused by Officer Knuckles. According to Officer Knuckles, Biesty asserts that he was initially scared to state that Officer Knuckles caused the injuries because he feared retaliation from the police. Officer Knuckles further states that Biesty claimed the reason he feared retaliation was because of prior experiences he had while in jail in New York on prior charges.

The Court will be better able assess the relevancy of Biesty's prior criminal history after Biesty's direct testimony. The Court will likewise be in a better position to assess whether any prior conviction is more prejudicial than probative. Prior to attempting to introduce or elicit any evidence of Biesty's prior criminal history – other than the 2014 arrest warrant – Officer Knuckles must approach the bench to obtain specific permission to do so. Biesty may reassert this motion at that time.

3) Biesty moves to exclude "any and all 911 calls." This motion is **DENIED** with leave for Biesty to reassert it at trial. Biesty does not put forth any specific argument as to why all 911 calls should be excluded or explain the contents of any such calls. Officer Knuckles, in a footnote, indicates there is only one such recording and that it contains a conversation between Biesty's girlfriend, Jacqueline Rose, and dispatch. Officer Knuckles argues that the recording is relevant because the conversation occurred immediately after the arrest and that Rose does not mention any assault by Officer Knuckles. If Officer Knuckles intends to introduce this recording, he should be prepared to play it for the Court at the pretrial conference. Further, prior to introducing this recording, Officer Knuckles should approach the bench to obtain specific permission to do so. At that point, the Court should be able to better assess the relevancy of the recording and any potential prejudice.

4) Biesty moves to exclude any reference to his altercation with Stephen Todd Wells prior to the arrest at issue and any statements that Biesty "punched" Wells two days

before the arrest. This motion is **DENIED**. Biesty does not set forth any reason this evidence in particular should be excluded. Further, it is the Court's understanding that Officer Knuckles denies causing any injuries to Biesty's face and that, initially, Biesty attributed the injuries to his altercation with Wells. Accordingly, evidence regarding that altercation is directly probative as to whether Officer Knuckles caused Biesty's facial injuries. Further, because the jury will be presented with evidence that Biesty did have facial injuries after the arrest, it would be unfairly prejudicial to Officer Knuckles to admit such evidence without also permitting evidence of an alternative reason for the injuries.

Biesty moves to exclude a statement by Wells dated May 4, 2014 stating that Wells fought with Beasty two days before the arrest and "blacked his eyes." Wells further stated that Biesty "offered me a new car if I wouldn't say what happened about ten minutes prior to me coming down here to give this statement to Capt. McKinney. I know for a fact Officer Knuckles didn't do it cause I did it."

Officer Knuckles argues that the statement falls into an exception to the hearsay rule under Fed. R. Evid. 804(b)(3). That rule provides that, in a civil case, an out-of-court statement is not excluded under the hearsay rules if the declarant is unavailable and:

> a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability. . .

Fed. R. Evid. 804(b)(3).

This motion is **DEFERRED**. Officer Knuckles asserts that Wells is unavailable because he died earlier this year. In addition, the statement does appear to expose Wells to criminal and civil liability for assault. Nevertheless, the Court is unable to rule on this motion without knowing the circumstances behind the statement.

5) Biesty moves to exclude evidence regarding a 2008 work-related injury and the fact that he received Social Security Disability; his receipt of prescription medication for anxiety; evidence regarding injuries sustained by Biesty that formed the basis for Biesty's lawsuit against a horseowner; and evidence regarding injuries sustained by Biesty in a prior auto accident.

This motion is **DENIED** to the extent that any such evidence is related to injuries that Biesty claims he suffered in the altercation with Officer Knuckles. It is the Court's understanding that Biesty seeks some medical expenses and pain and suffering. Any evidence that Biesty had previously suffered injuries similar to those that he claims to have suffered as a result of the altercation is directly relevant to causation. The Court is unable to rule on the admissibility of particular items of the evidence at issue

without a better understanding of the damages Biesty will claim at trial. Accordingly, prior to offering any of the evidence at issue, Officer Knuckles shall approach the bench for permission to do so and Biesty may reassert this motion at that time.

6) Biesty moves to exclude evidence regarding his child support obligations; the fact that he has five children with different women; the fact that he has lived in several different states for the last 2 years; his receipt of governmental assistance; the fact that he receives income from his mother; his failure to graduate high school and lack of a GED; any reference to any involvement with the mafia; and any reference to any "off the book" employment.

This motion is **GRANTED**. The issue in this case is whether Officer Knuckles used excessive force in arresting Biesty. Officer Knuckles argues this evidence is relevant to Biesty's credibility regarding the incident because it establishes a motive to lie, i.e., his precarious financial condition. At this point, the evidence does not appear to be directly relevant to any issues in this matter. Nevertheless, should Officer Knuckles believe the evidence becomes relevant at trial, he may approach the bench for permission to elicit or introduce any such evidence.

7) Biesty moves to exclude evidence that he and his girlfriend of 11 years are not married. Officer Knuckles argues that, if Rose testifies, evidence regarding her relationship to Biesty is directly relevant to bias. This motion is **GRANTED** with leave for Officer Knuckles to move for reconsideration if Rose should testify.



Signed By:
Karen K. Caldwell
United States District Judge
8/2/16